NELSON B. KILLMER, Appellant, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

The common-law duty imposed upon common carriers to carry goods upon being paid a reasonable compensation does not preclude special contracts between railroad corporations and shippers regulating the freight charges; and where freight has been carried for a long course of years at the schedule price, the shipper making no objection as to the reasonableness of the charge, he must be deemed to have assented to the charge as reasonable, and to have voluntarily waived any objection thereto; at least the receipt of the freight by the company at the tariff rate has no element of extortion, and an action is not maintainable to recover back any portion thereof, although evidence is given authorizing a finding that the charge was more than a reasonable sum for the transportation.

As to whether the authority conferred upon the H. R. R. R. Co. by its charter (§ 21, chap. 263, Laws of 1831), " to fix, regulate and receive the tolls and charges by them to be received for the transportation of property," abrogates, as to it, the common-law duty to carry goods at a reasonable compensation, and authorizes it, or its lessees, to charge what it pleases, quære.

(Argued October 9, 1885 ; decided November 24, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 25, 1883, which affirmed a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial.

---

This action was brought by plaintiff, as assignee of the firm of Slawson Brothers, to recover an excess over what was alleged to be a reasonable charge for the transportation of milk over the Harlem railroad, of which road defendant was the lessee.

The material facts are stated in the opinion.

*Charles B. Myer* for appellant. The defendant, as a common carrier, created such by charter for the sole purpose of serving the public, was bound to transport freight for reasonable compensation. (Laws of 1831, chap. 263, § 21; Laws of 1831, chap. 270, § 21; *Tonnelle* v. *Hall*, 4 N. Y. 140; *King* v. *Pease*, 1 Nev. & Man. 690; *Gildart* v. *Gladstone*, 11 East, 685; *Barrett* v. *S. & D. R. R. Co.*, 2 Mann. & G. 164; *Niblett* v. *Pottow*, 4 Moore & Scott, 595; *Parker* v. *Gt. W. Ry. Co.*, 7 Mann. & G. 288; *C. & A. R. R. Co.* v. *Pittsburgh*, 1 Pittsb. 396; *Davison* v. *Co. Com'r*, 18 Minn. 482; *Rogers* v. *Burlington*, 3 Wall. 654; *Olcott* v. *Supervisors*, 16 id. 678; *B. & M. L. R. R. Co.* v. *Brooks*, 60 Me. 569; *Allen* v. *Jay*, id. 124; *Munn* v. *Illinois*, 94 U. S. 70; *Kimball* v. *B. & A. R. R. Co*, 70 N. Y. 569; Laws of Mass., 1829, chaps. 26, 93; Laws of Mass., 1830, chap. 4; *Casey* v. *Erie & N. E. R. R. Co.*, 2 Casey, 287; *Perrire* v. *C. & D. C. Co.*, 9 How. 184; *P. & R. I. R. R. Co.* v *C. V. M. Co.*, 68 Ill. 493; *Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 74; *R. R. Com'rs* v. *P. & O. C. R. R. Co.*, 63 Me. 274; *Comm.* v. *F. R. R. Co.*, 12 Gray, 187; Laws of Mass., 1845, chap. 191; *M. & L. R. R. Co.* v. *Fisk*, 33 N. H. 308; *Gt. W. R. R. Co.* v. *Sutton*, L. R., 4 H. L. 236; *C. & A. R. R. Co.* v. *People*, 67 Ill. 17; *McDuffee* v. *R. R. Co.*, 52 N. H. 447; *Sanford* v. *C. R. R. Co.*, 12 Harris, 382; *Aldnuth* v. *Inglis*, 12 East, 537; *Munn* v. *Illinois*, 94 U. S. 70; *Spofford* v. *B. & Me. R. R. Co.*, 128 Mass. 329; *Crouch* v. *Gt. N. R. R. Co.*, 11 Exch. 750.) The statutory right to " fix the charges " does not permit the exaction of unreasonable rates. (*Parker* v. *G. W. R. R. Co.*, 11 C. B. 545; *Edwards* v. *G. W. R. R. Co.*, id. 588; *Baxendale* v. *G. W. R. R. Co.*, 16 C. B. [N. S.] 138; *Sutton* v. *G. W. R. R. Co.*, 3 Hurlst. & Colt. 800; *Swan* v. *Williams*, 2 Mich.

439; *C. & A. R. R. Co.* v. *People*, 67 Ill. 17; *Sloan* v. *P. R. R. Co.*, 61 Mo. 31; *Camblos* v. *P. & R. R. Co.*, 9 Phila. 441; *Ruggles* v. *People*, 91 Ill. 265; *Stewart* v. *E. & W. T. Co.*, 17 Minn. 391; *Slaughter-House Cases*, 16 Wall. 48.) The legislature will not be held to have been so indifferent to the trusts committed to it as to have granted arbitrary control over such vital public interests to a mere creature of the law. (*R. R. Com'rs* v. *P. & O. C. R. R. Co.*, 63 Me. 274; *Sanford* v. *C. R. R. Co.*, 12 Harris, 382.) If section 21 of the charter of the Harlem Railroad Company is to be construed as giving the defendant the right to exact whatever rates it arbitrarily pleases, unreasonable and extortionate if it pleases, then it is unconstitutional. (Const., art. 1, § 6; *Murray* v. *H. L. Co.*, 18 How. 276; Bouvier's Law Dict.; *Taylor* v. *Porter*, 4 Hill, 145; *State* v. *Beswick*, 13 R. I. 211; 5 Webster's Works, 487; *Bank* v. *Okley*, 4 Wheat. 235; *State* v. *Simons*, 2 Speirs, 761; *State* v. *Doherty*, 60 Me. 509; *Cooper* v. *Williams*, 5 Ohio, 392; *Buckingham* v. *Smith*, 10 id. 296; *Munn* v. *Illinois*, 94 U. S. 12.) The Harlem charter originally granted the power of exacting exorbitant rates, at the pleasure of the respondent, under the last section of that charter, reserving to the legislature the right to alter, amend or repeal the same. That power was repealed by section 9, chapter 270, Laws of 1847, which provided that "any railroad company receiving freight for transportation shall be entitled to the same rights and be subject to the same liabilities as common carriers." (*Root* v. *Gt. W. R. R. Co.*, 45 N. Y. 532.) There was no special service rendered by the respondent beyond that which it was required to render under its charter and as a common carrier. (Story on Bail., § 509; *Gt. W. R. R. Co.* v. *Hawkins*, 18 Mich. 427; *Stewart* v. *Erie & W. T. Co.*, 17 Minn. 390; *Wibert* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 245; *Tierney* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 305; *G. & C. U. R. R. Co.* v. *Rae*, 18 Ill. 489; Laws of 1850, chap. 140, § 36.) The payments to the respondent, to the extent of the excess over reasonable rates, were not voluntarily made and can be recovered back. (Cowper, 218; 2 Stark. on Ev. 66; *Ashley* v. *Reynolds*, 2 Esp. 723; *Shaw* v. *Wood-*

*cock*, 7 Barn. & Cress. 73; *Alter* v. *Backhouse*, 3 Mees. &
W. 633; *Mowatt* v. *Wright*, 1 Wend. 360; *Chase* v. *Dwinal*,
7 Greenl. [Me.] 134; *Ripley* v. *Gelston*, 9 Johns. 208;
*Harmony* v. *Bingham*, 12 N. Y. 116; *Tutt* v. *Ide*, 3 Blatchf.
C. C. 249; *L. & T. R. R. Co.* v. *Pattison*, 41 Ind. 313; *Steele*
v: *Williams*, 8 Exch. 631; *Shepherd* v. *Chewter*, 1 Campb. 275;
*Wheadon* v. *Olds*, 20 Wend. 174; *Waite* v. *Leggett*, 8 Cow.
196; *Lake* v. *Artisans' Bk.*, 3 Abb. [N. S.] 209; *Rheel* v.
*Hicks*, 25 N. Y. 291; *Chapman* v. *City of Brooklyn*, 40 id.
379; *Kingston* v. *Eltinge*, id. 395; *Schwinger* v. *Hickock*, 53
id. 386; L. R., 3 Q. B. Div. 144, 147, 150; L. R., App. Cas.
1039; *Curtis* v. *R. & S. R. R. Co.*, 18 N. Y. 544; *Lamb* v. *C.
& A. R. R. Co.*, 46 id. 289.) Slawson Bros. had a right to have
their milk transported by the defendant, and the defendant, as
a common carrier and public functionary, was bound to carry
it for a reasonable rate. (*Parker* v. *Gt. W. R. R. Co.*, 7 Man. &
Gran. 292; *Sutton* v. *Gt. W. R. R. Co.*, L. R., 4 H. L. Cas.
249; *C. & A. R. R. Co.* v. *C. & V. W. C. Co.*, 79 Ill. 130.)
No protest was necessary. (*R. R. Co.* v. *Lockwood*, 17 Wall.
379; *Swift* v. *U. S.*, 111 U. S. 22; *McGregor* v. *Erie*, 35 N.
J. L. 89–113; *Peters* v. *R. R. Co.*, 42 Ohio, 275; *M. & M. R.
Co.* v. *Steiner*, 61 Ala. 595; *Nelson* v. *H. R. R. R. Co.*, 48
N. Y. 499; *Zinn* v. *N J. St. B. Co.*, 49 id. 445; *Sloan* v. *P.
R. R. Co.*, 61 Mo. 32; *Bentley* v. *Bentley*, 7 Cow. 701; *Potter* v. *Deyo*, 19 Wend. 361; *Harris* v. *White*, 81 N. Y. 547;
*Lamb* v. *C. & A. R. R. Co.*, 46 id. 289.) The respondent is
bound as a public servant, created to perform a public function
and solely for the purpose of serving the public, to do so impartially and equally. (*Camblos* v. *P. & R. R. R. Co.*, 9
Phila. 442; *S. E. Co.* v. *M. & L. R. R. Co.*, 8 Fed. Rep. 799;
*Piddington* v. *S. E. R. Co.*, 5 C. B. [N. S.] 112; *Peck* v. *N.
S. R. R. Co.*, 10 H. L. Cas. 571; *Crouch* v. *Gt. N. R. R. Co.*,
11 Exch. 750; *C. B. & Q. R. R. Co.* v. *Parks*, 18 Ill. 464.)
The fact that a lower rate is charged one shipper than another
is evidence that the higher rate is *pro tanto* unreasonable.
(*Gt. W. Ry. Co.* v. *Sutton*, L. R., 6 H. L. 237; *Messenger* v.

*P. R. R. Co.*, 36 N. J. L. 411; *Piddington* v. *S. E. R. Co.*, 5 C. B. [N. S.] 112.)

*H. H. Anderson* for respondent. There being a special contract no cause of action existed. (Story on Bailments, § 543; *Wells* v. *S. Nav. Co.*, 2 Comst. 209; *Thomas* v. *B. & P. R. R. Co.*, 10 Metc. 472; *N. P. Co.* v. *B. & M. R. R. Co.*, 1 Gray, 270.) The defendant has full power to fix the rate of transportation in the absence of a special agreement. (Laws of 1831, chap. 328; Laws of 1846, chap. 280; Laws of 1846, chap. 216, §§ 17, 23; Laws of 1850, chap. 9, § 3; 1 Laws of 1847, chap. 270, § 9, p. 298; Laws of 1850, chap. 140, §§ 28, 33, 36; 2 Laws of 1869, chap. 917, pp. 23, 99, §§ 4, 8; Laws of 1874, chap. 240, p. 294; *Fisher* v. *N. Y. C. & H. R. R. R. Co.*, 46 N. Y. 644; *Grosvenor* v. *Same*, 39 id. 34; *C., B. & Q. R. R. Co.* v. *Iowa*, 94 U. S. [4 Otto] 161.) The moneys were voluntarily paid upon a claim of right, and they cannot be recovered back. The onus is upon the plaintiff to show that the money paid was extorted from him unjustly by duress of goods. (*Briggs* v. *Boyd*, 56 N. Y. 289; *Flower* v. *Lance*, 59 id. 610; *Quincey* v. *White*, 63 id. 370; *Mowatt* v. *Wright*, 1 Wend. 355; *Clark* v. *Dutcher*, 9 Hill, 673.) It being shown that the rate was known to the shipper, as he shipped without objection, his assent to the rate charged is to be implied. (*Nelson* v. *H. R. R. R. Co.*, 48 N. Y. 498; *Grosvenor* v. *N. Y. C. R. R. Co.*, 39 id. 34.)

Andrews, J. We deem it unnecessary to consider the the question argued by counsel, whether the authority conferred upon the Harlem Railroad Company by its charter (Laws of 1831, chap. 263, § 21) to " fix, regulate and receive the tolls and charges by them to be received for the transportation of property," etc., enables the company or its lessees, as claimed in behalf of the defendant, to charge what it pleases, and abrogates as to them the obligation imposed upon common carriers by the common law, to carry goods delivered for carriage upon being paid a reasonable compensation. There is certainly much authority against the construction contended

for by the defendant.   But we are of opinion the defendant is entitled to prevail in this action, upon the ground that under the circumstances proved, and assuming that there was evidence upon which the jury might have found that the defendant had charged, and that Slawson Bros. had paid more than a reasonable sum for milk transportation, the payments were voluntary and not made under duress, or induced by fraud or deceit, or under circumstances which entitle Slawson Bros., or their assignee, to recover back the excess.

In general terms, the action is brought to recover from the defendant the sum of $60,000, which, the complaint alleges, was exacted from Slawson Bros. by the defendant, between December, 1873, and December, 1879, for the transportation of milk from points on the line of the Harlem railroad to the city of New York, such sum being, as alleged, the excess paid by Slawson Bros. for such transportation, beyond a reasonable charge, in order to obtain possession of their property.   Slawson Bros. were milk dealers in the city of New York.   Their supplies were procured on the line of the Harlem road, and from 1866 to 1879, the milk purchased by them was transported in cans on the defendant's road from the place of shipment to the city of New York by a special milk train, and the empty cans were returned over the defendant's road to the place of shipment.   For this service the defendant, during this period, up to May, 1877, charged a tariff rate of sixty cents for every forty gallons of milk carried, and after that date a rate of forty-five cents.   It was the custom of the defendant to require dealers to pay the freight at the time the milk was delivered in New York, but in dealing with Slawson Bros. this custom was at times departed from and payment made after delivery.   There was never any agreement between Slawson Bros. and the defendant as to the rate of freight to be charged or paid beyond what may be implied from a general tariff rate fixed by the defendant and known to the Slawson Bros. and the payment by Slawson Bros. for the service at that rate.   It was admitted on the trial that Slawson Bros.

paid the freight daily at the tariff rate without making any objection. The evidence is uncontroverted that from 1866 to August, 1879, a period of thirteen years, there were almost daily shipments by Slawson Bros. over the defendant's road, and not only was there no negotiation between the parties as to the rate of freight to be charged, but there was never any complaint or remonstrance on the part of Slawson Bros., that the charge was excessive. The firm shipped the milk, paid the tariff rate for the transportation, asking no questions and apparently waiving all inquiry. The complaint bases the right to recover on the ground of extortion. The extortion, if any, consists simply in the fact that the defendant fixed an excessive rate, which Slawson Bros. paid without objection. If Slawson Bros. are entitled to recover under the circumstances, then every person who at any time within six years before the commencement of an action, has paid to a carrier by rail, vessel, or other conveyance, an unreasonable charge for the carriage of goods, whether in one or a thousand instances, and, whether the carrier is an individual or a corporation, can maintain an action to recover back the excess paid beyond a reasonable charge, although he paid without demur, and by not objecting apparently assented at the time to the propriety of the charge. The counsel for the plaintiff, in his able argument, cited cases from the English courts, arising under what is known as the equality clause in English railroad charters, and statutes, which in substance prohibits preferential rates between shippers, and requires equality of charge under similar circumstances. The cases referred to, in general, were actions brought by the shipper against whom a discrimination had been made in violation of the act, to recover back money exacted from him as a condition of carrying or delivering his goods in excess of the sum charged to other shippers for a similar service, and the actions were maintained, except where the inequality of the charge was known to the shipper or his agent and was paid without objection, in which case it was held that the plaintiff could not recover. (*Evershed* v. *Lond. & N. W.*

*R. R. Co.*, L. R., 3 Q. B. Div. 144; *S. C.*, L. R., 3 App. Cas. 1029 ; *Gt. W. R. R. Co.* v. *Sutton*, 3 H. & C. 800 ; *S. C.*, L. R., 4 H. L. Cas. 226; *Lancashire R. R. Co.* v. *Gidlow*, L. R., 7 H. L. Cas. 517; *Parker* v. *Gt. West. R. R. Co.*, 7 Man. & G. 253.) In those cases there was a violation of a specific statutory duty on the part of the railroad corporation, and in all of them the payment was made either under protest, or in ignorance of a fact which could only be known, in general, by the corporation, and which was concealed by the shipper.

What is a reasonable sum for transportation of goods on the great railroad lines of the country in a given case is often a complex question, into which enters many elements and considerations, and is incapable of exact solution. The legislature has reserved in the general act for the formation of railroad companies, the right to regulate the question of freights, and in the charter of the Harlem railroad the right to alter, amend, or repeal the same. (Laws of 1850, chap. 140, § 28, subd. 9 ; Laws of 1831, chap. 263, § 18.) While this reservation of power by the legislature does not probably exclude the enforcement of the common-law duty through an action in behalf of an individual injured by its violation, it is a safeguard against any long-continued abuse and oppression on the part of railroad corporations. But the common-law duty does not preclude special contracts between railroad corporations and shippers, regulating the freight charge, and where, as in this case, freight has been carried for a long course of years, at schedule price, the shipper making no objection and no inquiry as to the reasonableness of the charge, and when it was his interest to object if the charge was unreasonable, he must, we think, be deemed to have assented to the charge as reasonable, and to have voluntarily waived any objection thereto. At least the receipt by the company of the freight at the tariff rate, under such circumstances, has no element of extortion. The company is doubtless better informed than the shipper as to what would be a compensatory or reasonable charge, but many of the facts which enter into the formation of a judgment on the question are accessible to the shipper, and it would not be in accord-

ance with general principles of justice that he should be permitted to forbear all means of ascertaining the truth, and after the lapse of years for the first time open a question which he did not, at the time of the transaction, regard of sufficient importance to engage his attention.

We are of opinion that this action cannot be maintained. The express admission that the payments sought to be recovered, were made without objection, renders it unnecessary to consider whether the small part of the claim which accrued after the service of the notice of August 20, 1879, stands in any different position from the rest. There is no evidence that the notice was authorized by Slawson Bros., but if it was, in view of the admission, no question arising upon the notice is involved in the case.

The judgment should be affirmed.

All concur.

Judgment affirmed.