SAMUEL C. ROOT, Respondent, v. THE LONG ISLAND RAILROAD COMPANY, Appellant.

A railroad corporation may not make an unreasonable or unjust discrimination between its customers in its freight charges.

The question as to whether such discrimination has been made is ordinarily one of fact.

Defendant and one Q. entered into a written contract, which provided that the latter should build, upon certain lands belonging to the former, a dock and erect thereon a pocket for holding and storing coal. Defendant was to have the use of the south side of the dock and of thirty feet of the shore end and the right to use the other portions when not required by Q. In consideration thereof defendant agreed to transport in its cars all the coal in car loads offered for transportation by Q. for the term of ten years at a rebate of fifteen cents per ton from the regular tariff rates, Q. to load the coal, and it was understood he was to ship large quantities. At the termination of the contract the dock and structures were to be appraised and the value thereof, less $2,000 advanced by defendant, paid to Q. The dock and coal-pocket were constructed, pursuant to this agreement, at an expense of $17,000, and coal in large quantities shipped over defendant's road by Q. or his assignee, under the contract. In an

action to recover the rebate agreed upon, defendant claimed that the contract was against public policy and, therefore, illegal and void. There were no findings or request to find, as matter of fact, that there was any unjust discrimination. *Held*, that this could not be found, as matter of law, and in the absence of such a finding the action was not maintainable.

(Argued April 22, 1889; decided May 3, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made the        day of July, 1886, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are sufficiently stated in the opinion.

*Edward E. Sprague* for appellant. The agreement for a rebate is void as against public policy. (*In re N. F. & W. R. R. Co.*, 108 N. Y. 375; *People* v. *N. Y. C. R. R. Co.*, 28 Hun, 545; *Keeney* v. *G. T. R. R. Co.*, 47 N. Y. 525; *Tierney* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 305; *Atwater* v. *D., L. & W. R. R. Co.*, 48 N. J. L. 55; *Messenger* v. *P. R. R. Co.*, 36 id. 407; *C. & A. R. R. Co.* v. *People*, 67 Ill. 11; *McDuffie* v. *R. R. Co.*, 52 N. H. 447; *N. E. E. Co.* v. *M. C. R. R. Co.*, 57 Me. 188; *Samuels* v. *L. & N. R. R. Co.*, 30 Am. and Eng. Rep. 79; *Hays* v. *Pa. Co.*, 6 id. 594; *D. & N. O. R. R. Co.* v. *A., T. & S. F. R. R. Co.*, 9 id. 374; *Vincent* v. *C. & A. R. R. Co.*, 49 Ill. 33; *Shipper* v. *P. R. R. Co.*, 47 Penn. St. 338; *Rhodes* v. *N. P. R. R. Co.*, 21 Am. and Eng. Rep. 31; *B. & O. R. R. Co.* v. *A. Ex. Co.*, 18 id. 461; *A., T. & S. F. R. R. Co.* v. *D. & N. O. R. R. Co.*, 110 U. S. 667; *R. R. Co.* v. *Forsaith*, 59 N. H. 122.) Illegality is a good defense as between the parties to the contract. (*Arnot* v. *P. E. Coal Co.*, 68 N. Y. 558; *Knowlton* v. *C. & E. S. Co.*, 57 N. Y. 518; *Messenger* v. *P. R. R. Co.*, 36 N. J. L. 407.)

*Francis Lynde Stetson* for respondent. The defendant's agreement to carry coal for plaintiff's assignor for fifteen cents a ton less than for customers other than the Brooklyn water-works

was valid and enforceable against defendant, notwithstanding the alleged defense of a contrary public policy. (*Kilmer* v. *N. Y. C. & H. R. R. R. Co.*, 100 N. Y. 395, 402 ; *Baxendale* v. *E. R. Co.*, 4 C. B. [N. S.] 63 ; *Coggs* v. *Bernard*, 1 Smith's L. C. 284 ; *F. R. R. Co.* v. *Gage*, 12 Gray, 393 ; *Menacho* v. *Ward*, 27 Fed. Rep. 529 ; 23 Blatch. 502 ; 34 Alb. L. Jour. 44 ; *Johnson* v. *P. & P. R. R. Co.*, 16 Fla. 623, 668 ; 26 Am. Rep. 731 ; 1 Chitty on Contracts [11th Am. ed.] 687 ; *Oxlade* v. *Railway Co.*, 1 C. B. [N. S.] 454 ; *In re Ransome*, Id. 437 ; *Nicholsen* v. *Railway Co.*, 5 id. 366 ; *In re Jones*, 3 id. 718 ; *Robinson* v. *Railway Co.*, 35 L. J., C. P. 123 ; *Pickford* v. *Railway Co.*, 10. M. & W. 122 ; *Messenger* v. *P. R. R. Co.*, 36 N. J. L. 407, 410 ; 18 Am. Rep. 754, 759 ; *Atwater* v. *D., L. & W. R. R. Co.*, 4 East. Rep. 189.) The approvals by defendant of the several assignments to plaintiff and his associates may be considered as binding the defendant, as an estoppel against a denial of plaintiff's right to enjoy all the apparent benefits of the contract. (*L'Amoreaux* v. *Vischer*, 2 N. Y. 278 ; *Wolfe* v. *S. F. Ins. Co.*, 39 id. 49 ; *Townsend* v. *Scholey*, 42 id. 18 ; *E. C. Bank* v. *Roop*, 48 id. 292 ; *Weyh* v. *Bolan*, 85 id. 394, 397 ; *Fish* v. *Cotnett*, 44 id. 538 ; *Carpenter* v. *O'Dougherty*, 2 T. & C. 427 ; *Watson* v. *McLaren*, 19 Wend. 557 ; *Petrie* v. *Feeter*, 21 id. 172 ; *Tylee* v. *Yates*, 3 Barb. 222 ; *Wendel* v. *Van Rensselaer*, 1 Johns. Ch. 344 ; *Edgerton* v. *Thomas*, 9 N. Y. 40.) A new contract may be considered to have been effected by defendant's approval of the several assignments to plaintiff of the original contract. (*L'Amoreaux* v. *Vischer*, 2 N. Y. 278 ; *Shearman* v. *N. F. Ins. Co.*, 2 Sweeney, 476 ; 46 N. Y. 426, 531 ; 17 id. 427.)

HAIGHT, J. In June, 1876, the defendant and one Quintard entered into a written contract which, among other things, provided that Quintard should build at Long Island City upon the lands of the defendant a dock two hundred and fifty feet long and forty feet wide, and erect thereon a pocket for holding and storing coal according to certain plans and specifications annexed. The defendant was to have the use of the south side

of the dock, and also of thirty feet of the shore end, and the right to use the other portions thereof when not required by Quintard. In consideration therefor the defendant agreed with Quintard to transport in its cars all the coal in car loads offered for transportation by him at a rebate of fifteen cents per ton, of twenty-two hundred and forty pounds, from the regular tariff rates for coal transported by the defendant from time to time, except in the case of the coal carried for the Brooklyn Water-Works Company, with which company the defendant reserved the right to make a special rate which should not be considered "the regular tariff rate." The defendant also agreed with Quintard to provide him with certain yard room and office room free of rent, and the contract was to continue for the term of ten years, and at the termination of the contract the dock and structures were to be appraised, and the value thereof, less the sum of $2,000 advanced by the defendant, to be paid to Quintard. Pursuant to this agreement the dock and coal-pocket were constructed at an expense of $17,000, and coal in large quantities was shipped over the defendant's road by Quintard or his assignee under the contract, and it is for the rebate of fifteen cents per ton upon the coal so shipped that this action was brought.

The defense is that the contract was against public policy, and was, therefore, illegal and void. The defendant is a railroad corporation organized under the laws of the state, and was, therefore, a common carrier of passengers and freight, and was subject to the duties and liabilities of such. These duties and liabilities have often been the subject of judicial consideration in the different states of the union. In Illinois it has been held that a railroad corporation, although permitted to establish its rates for transportation, must do so without injurious discrimination to individuals; that its charges must be reasonable. (*C. & A. R. R. Co.* v. *People ex rel. Koerner*, 67 Ill. 11; *Vincent* v. *C. & A. R. R. Co.*, 49 id. 33.) In Ohio it was held that, where a railroad company gave a lower rate to a favored shipper with the intent to give such shipper an exclusive monopoly, thus affecting the business and destroy-

ing the trade of other shippers, the latter have the right to require an equal rate for all under like circumstances. (*Scofield* v. *R. Co.*, 43 Ohio St. 571.)   In New Jersey it has been held that an agreement by a railroad company to carry goods for certain persons at a cheaper rate than it would carry under the same conditions for others, is void as creating an illegal preference; that common carriers are public agents transacting their business under an obligation to observe equality towards every member of the community; to serve all persons alike without giving unjust or unreasonable advantages by way of facilities for the carriage, or rates for the transportation of goods.   (*Messenger* v. *P. R. R. Co.*, 36 N. J. L. 407; *State ex rel. Atwater* v. *D., L. & W. R. R. Co.*, 48 id. 55.) In New Hampshire it has been held that a railroad is bound to carry, at reasonable rates, commodities for all persons who offer them as early as means will allow; that it cannot directly exercise unreasonable discrimination as to whom and what it will carry; that it cannot impose unreasonable or unequal terms, facilities or accommodations.   (*McDuffee* v. *P. & R. R. R. Co.*, 52 N. H. 430.)   To similar effect are cases in other states.   (*N. E. Ex. Co.* v. *M. C. R. R. Co.*, 57 Me. 188; *Shipper* v. *P. R. R. Co.*, 47 Penn. St. 338; *Fitchburg R. R. Co.* v. *Gage*, 12 Gray, 393; *Menacho* v. *Ward*, 27 Fed. Rep. 529.)

In New York the authorities are exceedingly meager.   The question was considered to some extent in the case of *Killmer* v. *New York Central & Hudson River Railroad Company* (100 N. Y. 395), in which it was held that the reservation in the general act of the power of the legislature to regulate and reduce charges, where the earnings exceeded ten per cent of the capital actually expended, did not relieve the company from its common-law duty as a common carrier; that the question, as to what was a reasonable sum for the transportation of goods on the lines of a railroad in a given case is a complex question into which enters many elements for consideration.

In determining the duty of a common carrier we must be reasonable and just.   The carrier should be permitted to charge reasonable compensation for the goods transported.   He should

not, however, be permitted to unreasonably or unjustly discriminate against other individuals to the injury of their business where the conditions are equal. So far as is reasonable all should be treated alike; but we are aware that absolute equality cannot in all cases be required, for circumstances and conditions may make it impossible or unjust to the carrier. The carrier may be able to carry freight over a long distance at a less sum than he could for a short distance. He may be able to carry a large quantity at a less rate than he could a smaller quantity. The facilities for loading and unloading may be different in different places, and the expenses may be greater in some places than in others. Numerous circumstances may intervene which bear upon the cost and expenses of transportation, and it is but just to the carrier that he be permitted to take these circumstances into consideration in determining the rate or amount of his compensation. His charges must, therefore, be reasonable, and he must not unjustly discriminate against others, and in determining what would amount to unjust discrimination all the facts and circumstances must be taken into consideration. This raises a question of fact which must ordinarily be determined by the trial court.

The question as to whether there was unjust discrimination embraced in the provisions of the contract does not appear to have been determined by the referee, for no finding of fact appears upon that subject. Neither does it appear that he was requested to find upon that question, and, consequently, there is no exception to the refusal to find thereon. Unless, therefore, we can determine the question as one of law, there is nothing upon this subject presented for review in this court.

Is the provision of the contract, therefore, providing for a rebate of fifteen cents per ton from the regular tariff rates an unjust discrimination as a matter of law? Had this provision stood alone, unqualified by other provisions, without the circumstances under which it was executed, explaining the necessity therefor, we should be inclined to the opinion that it did

provide for an unjust discrimination, but, upon referring to the contract, we see that the rebate was agreed to be paid in consideration for the dock and coal-pocket, which was to be constructed upon the defendant's premises at an expense of $17,000, in part for the use and convenience of the defendant. Quintard was to load all the cars with the coal that was to be transported. It was understood that a large quantity of coal was to be shipped over defendant's line, thus increasing the business and income of the company. The facilities which Quintard was to provide for the loading of the coal, his services in loading the cars, the large quantities which he was to ship, in connection with the large sums of money that he had expended in the erection of the dock, in part for the use and accommodation of the defendant, are facts which tend to explain the provision of the contract complained of, and render it a question of fact for the determination of the trial court, as to whether or not the rebate, under the circumstances of this case, amounted to an unjust discrimination, to the injury and prejudice of others.

Therefore, in this case, the question is one of fact, and not of law, and inasmuch as the discrimination has not been found to be unjust or unreasonable, the judgment cannot be disturbed.

The defendant, in its answer, alleged that the rebates accruing between the 1st day of January and the 31st day of October, 1879, were waived by the parties. The referee, upon request, refused to find that this was the case, and an exception was taken to such refusal.

Had we been sitting as a trial court, it is possible we should have reached a different conclusion, but on review the evidence is too meagre and indefinite to justify a reversal.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.